# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## KING AND OTHERS V. JOHNSON AND OTHERS.

### January 12, 1915.

### Absent, Keith, P.

1. REMAINDERS—*Rule in Shelley's Case.*—The doctrine of "the rule in *Shelley's Case,*" so far as applicable to devises, was that whenever an ancestor by will takes an estate of freehold in lands or tenements, and, in the same will, an estate is afterwards limited by way of reminder, either mediately or immediately, to his heirs or heirs of his body, the words "heirs" or "heirs of his body" are words of limitation, carrying the inheritance to the ancestor, and not words of purchase creating a contingent remainder in the heirs.

2. WILLS — *Meaning of "Heirs" — Intention.* — While the word "heirs" has a well defined technical meaning, it is sometimes used in writings, especially in wills, to describe children or some particular class of heirs. How used is a question of intention depending upon the terms of the will construed as a whole according to the rules which govern in the interpretation of written instruments.

3. WRITINGS—*Construction.*—In the construction of all written instruments technical words are presumed to be used in their technical sense unless the contrary plainly appears.

4. REMAINDERS—*Wills—Case in Judgment—Fee Simple.*—Under a devise in 1846 to R. for life "and should he die with a lawful heir, to his heir or heirs forever," but should he die without issue then to A. (brother of R.) and his heirs forever, R. takes a fee simple estate. The devise must be construed as one either to R. for life and then to his heirs, or to R. for life and then to the heirs of his body. In either view R. would take a fee simple. If it be the former then R. took a fee simple by the original limitation to him and his heirs and not by the effect of the statute of October, 1776, on an estate tail; for as the failure of issue is definite, no estate tail can be raised by implication and the fee simple to R. remains a fee simple. If the latter, R. took a fee simple by the operation of the statute of October 7, 1776, upon his ex-

7

press fee tail. The act of January 1, 1820, has no application to such a devise.

Appeal from a decree of the Circuit Court of Westmoreland county. Decree for the defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*A. T. Embrey* and *Wm. W. Butzner,* for the appellants.

*J. W. Chinn, Jr.* and *C. Harding Walker,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

Thomas King, by his last will and testament dated in July, 1845, and admitted to probate in January, 1846, disposed of the tract of land which is the subject matter of the controversy in this case in these words:

"I give to my son Rufus all my real estate in the county of Westmoreland for and during his natural life, and should he die with a lawful heir, to his heir or heirs forever. But should he die without issue I give the said land to my son Alexander S. King to him and his heirs forever."

Rufus and Alexander survived their father, and the former by a deed dated in August, 1864, conveyed or attempted to convey the land in fee to James W. Johnson, the ancestor of the appellees. Rufus King has since died leaving two sons and two daughters, who are the appellants.

This suit was instituted by the appellants for the purpose, among others, of having a construction of the will of Thomas King. The circuit court, in construing the will, held that Rufus King took a fee simple title in and to the land devised, and not merely a life estate as claimed by the appellants, and that the appellees had a good and perfect title to the same by inheritance from their ancestor, John-

son, the grantee of Rufus King. From that decree this appeal was taken.

The contention of the appellants is—

1st. "That under the common law and irrespective of any statutes whatever, Rufus King took a life estate only with contingent remainder in fee to his children, or with an alternative contingent remainder in fee to his brother Alexander; and that said devise does not come within the operation of the rule in *Shelley's Case;*" and

2nd. That "should appellants be in error in this, then under the statute operative January 1, 1820, converting an indefinite succession of issue into a definite succession of issue, Rufus had but an estate for life followed by a contingent remainder with a double aspect, and that upon the death of Rufus, appellants, his children, took a remainder in fee."

The appellees controvert both propositions asserted by the appellants.

The case has been elaborately and ably argued, and many cases in and out of this jurisdiction, together with text-writers, cited to sustain the respective contentions of the parties.

The clause of the will to be construed is very brief, containing only two sentences, and the other provisions of the will furnish no aid in the construction. If the will had been executed since the doctrine known as the rule in *Shelley's Case* was abolished (Code, section 2423), there would be no question that Rufus King only took a life estate in the land, but as the devise was made in 1845 or 1846 before the abolition of that rule, its meaning must be determined by the law as it then existed.

The doctrine of that rule, so far as applicable to devises, was, that whenever an ancestor by will takes an estate of freehold in lands or tenements and in the same will an estate is afterwards limited by way of remainder, either

mediately or immediately, to his heirs or heirs of his body, the words "heirs" or "heirs of the body" are words of limitation, carrying the inheritance to the ancestor, and not words of purchase creating a contingent remainder in the heirs. Whether the devise in question comes within the operation of that rule depends upon whether the words of limitation over following the devise to Rufus, the ancestor, include the whole line of the first-taker's heirs in indefinite succession, or only certain persons intended to be described by the use of the word "his heir or heirs forever." If those words were used in their technical sense, the rule applies; but if they were used as a designation or description of particular persons who were to take as purchasers in contradistinction to those who would take by inheritance, then the rule does not apply.

While the word "heirs" has a well settled technical meaning, it is sometimes used in writings, especially in wills, to describe children, or some particular class of heirs. How used is a question of intention depending upon the terms of the will construed as a whole according to the rules which govern in the interpretation of written instruments. In determining that question, as was said by President Moncure in delivering the opinion of the court in *Taylor* v. *Cleary,* 29 Gratt. (70 Va.) 448, 453, "great weight must be given to the technical meaning of the word 'heirs' which must be presumed to have been intended to be used in such technical sense in the absence of evidence of a plain intention to the contrary."

This rule of construction is not applicable specially to the word "heirs," but is the well settled general rule, that in the construction of all written instruments technical words are presumed to be used in their technical sense unless the contrary plainly appears. *Smith* v. *Chapman,* 1 H. & M. (11 Va.) 240, 290-1; *Findley* v. *Findley,* 11 Gratt. (52 Va.) 434; *Nye* v. *Lovitt,* 92 Va. 710, 24 S. E. 345, and cases cited.

Applying this rule of construction to the devise under consideration, there is nothing in the will which plainly shows that the words "his heir or heirs forever" were used in any other than their technical sense. This being so, it is clear that the devise in question comes within the rule in *Shelley's Case,* and that Rufus King took a fee simple estate in the land, unless affected by the act of Assembly which became operative January 1, 1820, converting an indefinite succession of issue into a definite succession of issue.

Whether the purpose of that statute was merely to effectuate the intention of the testator by rendering valid a limitation which would have been otherwise invalid as violative of the rule against perpetuities, by making the failure of issue definite, or had the further effect of preventing the operation of the rule in *Shelley's Case* where an estate tail is not express, it is not necessary to consider as it does not arise in this case. The devise in this case must be construed as one either to Rufus for life and then to his heirs, or to Rufus for life and then to the heirs of his body. In either view Rufus would take a fee simple. If it be the former then Rufus took a fee simple by the original limitation to him and his heirs and not by the effect of the statute of October, 1776, on an estate tail; for as the failure of issue is definite, no estate tail can be raised by implication, and the fee simple to Rufus remains a fee simple. If the latter, Rufus took a fee simple by the operation of the statute of October 7, 1776, upon his express fee tail. That the act which became operative January 1, 1820, had no effect upon such a devise as is under consideration in this case seems to be conceded by Prof. Graves, whose learned article on the subject of "Dying Without Issue in Virginia," 5 Va. Law Reg. 67, is so much relied on by counsel for the appellants. See his article on "Executory

Interests," 4 Va. Law Reg., p. 633, especially at pp. 657 and 658.

The differences between the learned professors, Graves and Minor, were as to the effect of the act which took effect January 1, 1820, upon a "Devise to A for life and if A die without issue remainder to B and his heirs," and not with reference to a devise like that under consideration in this case. See 4 Va. Law Reg., pp. 654, 656, 804-812; 5 Va. Law Reg. 67-91; 1 Minor's Real Prop., sec. 868-871; Graves' Notes on Real Property.

From what has been said, it follows that the court is of opinion that there is no error in the decree complained of and that it should be affirmed.

*Affirmed.*