HELENE FILLYAW ET ALS. CHILDREN AND HEIRS AT LAW OF HENRIETTA FILLYAW, DECEASED, v. ROBERT VAN LEAR.

(Filed 19 December, 1924.)

**Estates—Rule in Shelley's Case—Deeds and Conveyances—Remainders.**

An estate granted by deed with habendum to the grantee for "her own use and benefit during her life and after her death to the lawful heirs of her body who may be living at her death, and to the issue of such child or children who may predecease her, to represent his or her ancestor," etc.: *Held,* though the estate is to the first taker for life with limitation over to the lawful heirs of her body, the words then following show the intent of the grantor not to use the words "heirs of the body" as heirs general in the technical sense of the rule in *Shelley's case,* but to designate her children as the particular ones who shall take in remainder, and this rule having no application, the estate first granted is a life estate only.

CIVIL ACTION to remove a cloud from title to a piece of land claimed by plaintiffs, heard before *Grady, J.,* at September Term, 1924, of NEW HANOVER.

Defendant denies making any wrongful claim and asserts that he is the true owner of one undivided third of the property.

FILLYAW *v.* VAN LEAR.

By consent the cause is submitted to the court for decision in the following facts as determinative of the question presented:

"1. That on 29 November, 1876, Henry Schulken executed a deed to Matilda E. Van Lear, which was registered in Book NNN, at page 132, on 14 June, 1877, conveying the property and containing the provision hereinafter quoted, to wit:

" 'Beginning at a point in the northern line of Red Cross Street 110 feet eastwardly from the eastern line of Fourth Street; running thence eastwardly along said line of Red Cross Street 55 feet; thence northwardly and parallel with Fourth Street 66 feet; thence westwardly and parallel with Red Cross Street 55 feet; thence southwardly and parallel with Fourth Street 66 feet to the beginning; being a part of Lot 5 in Book 235 of the city of Wilmington, and also being part of a lot conveyed Henry Schulken by C. W. Oldham—Book BV, p. 32.

" 'To have and to hold the same for her own use and behoof during her life and after her death to the lawful heirs of her body who may be living at her death and to the issue of such child or children who may die before the said Matilda, so that the issue of such child or children shall represent his or her ancestor and take such share as such ancestor would have taken if he or she had been living at the time of the death of the said Matilda, and to their heirs and assigns forever.'

"That on 21 February, 1898, Matilda E. Van Lear and her husband, E. Van Lear, conveyed for value to Henrietta Fillyaw, wife of O. M. Fillyaw, the property above described by deed recorded in Book 21, page 48, of the records of New Hanover County, by the usual fee-simple deed, copy of which is hereto attached, and attached to the deed the following memorandum:

" 'We, E. Van Lear and wife, Matilda E., agree and promise that our children, Robert E. Van Lear and Louise Van Lear, who are now minors, shall and will execute deeds of release and quitclaim to Henrietta Fillyaw for the lot of land on Red Cross Street which we have this day conveyed to her, when they and as soon as they attain their majorities respectively.

" 'This 21 February, 1898.

E. VAN LEAR,
MATILDA E. VAN LEAR.'

"2. The last above memorandum is signed in the handwriting of E. Van Lear and Matilda Van Lear, but is not acknowledged or registered as a part of said deed and its competency as evidence and its legal effect is submitted to the court, the defendant contending that it is incompetent and has no effect upon the deed. The said deed last above referred to was made in exchange for another lot of land conveyed by

deed about the same time in fee simple by Henrietta Fillyaw and husband to Matilda E. Van Lear.

"3. That Matilda E. Van Lear and her husband, E. Van Lear, are dead and left surviving them the following children:

(a) Mrs. Lillie Cherry, wife of Geo. W. Cherry.

(b) Robert Van Lear.

(c) Mrs. Louise Lipscomb, wife of W. M. Lipscomb.

That Matilda Van Lear died August ........, 1920.

"4. That on 21 February, 1898, Lillie Cherry and husband, George W. Cherry, executed a deed to Henrietta Fillyaw for their interest in said property; and on the 28 August, 1905, Louise Van Lear, now Louise Lipscombe, executed a deed to Mrs. Henrietta Fillyaw for her interest in said property; and Robert E. Van Lear has not executed a deed for his interest therein, and now claims a one-third undivided interest in said property.

"5. That Henrietta Fillyaw, grantee of Matilda E. Van Lear, and husband, under the deed of the 21 February, 1898, is dead leaving the following children and heirs at law, who are now living:

Helene Fillyaw, Wilmington, N. C.; Bessie Herring, wife of Edward I. Herring, Wilmington, N. C., which said heirs at law claim that Matilda E. Van Lear took, under the deed from Henry Schulken, a fee simple in said property, which fee simple conveyed to their mother, Henrietta Fillyaw, under said deed of date 21 February, 1898, and to them by descent from their said mother, Henrietta Fillyaw, the property therein described."

Upon these facts the court entered judgment, as follows:

"This cause coming on to be heard before Henry A. Grady, judge, at September Term, 1924, New Hanover Superior Court, upon an agreed statement of facts, and having been argued by counsel, the court is of the opinion that under the deed from Henry Schulken to Matilda E. Van Lear, the habendum clause of which is copied in article one of said agreed statement of facts, the said Matilda Van Lear took only a life estate in and to the lands described therein, with remainder to her children or their issue, it is now, upon motion of C. D. Weeks, attorney for the defendant, considered, ordered and adjudged that the plaintiffs, Helene Fillyaw and Bessie Herring, and the defendant, Robert E. Van Lear, are tenants in common and are each entitled to a one-third undivided interest in and to the lands described in said deed, and entitled to partition of the same if they shall be so advised.

"It is further considered and adjudged that the costs of this action be taxed against the plaintiffs and the surety on their prosecution bond."

Plaintiffs excepted and appealed.

*Rountree & Carr for plaintiffs.*
*Weeks & Cox for defendant.*

HOKE, C. J.    From the facts submitted, it appears that on 29 November, 1876, Henry Schulken, owner of the property in controversy, conveyed same to Matilda E. Van Lear, the pertinent terms of said deed being as follows:

"To have and to hold the same for her own use and behoof during her life, and after her death to the lawful heirs of her body who may be living at her death, and to the issue of such child or children who may die before the said Matilda, so that the issue of such child or children shall represent his or her ancestor and take such share as such ancestor would have taken if he or she had been living at the time of the death of the said Matilda, and to their heirs and assigns forever."

If, as plaintiff contends, this deed conveyed to Matilda Van Lear a fee-simple title under the rule in *Shelley's case,* then, the ancestor of plaintiffs having acquired that title by proper deed, they are now the owners of the property, and defendant is making a wrongful claim.

If, however, as defendant contends, the Schulken deed only conveyed to Matilda Van Lear a life estate, remainder to her children, etc., then Robert Van Lear, a child of Matilda, and who has never parted with his share, on the death of his mother became the owner of one-third undivided interest in the lot, and the judgment of his Honor must be upheld.

The rule in *Shelley's case* is fully recognized in this State, and where the same properly applies it prevails as a rule of property, both in deeds and wills, and regardless of "any particular intent to the contrary otherwise appearing in the instrument."    *Hampton v. Griggs,* 184 N. C., p. 13; *Wallace v. Wallace,* 181 N. C., p. 158; *Crisp v. Biggs,* 176 N. C., p. 1; *Robeson v. Moore,* 168 N. C., p. 389.

Speaking to the rule and its application in *Wallace's case, supra,* it was held, among other things:

"Whenever an ancestor, by any gift or conveyance, took an estate of freehold, as an estate for life, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs or to the heirs of his body as a class to take in succession as heirs to him, such words are words of limitation of the estate, and conveys the inheritance, the whole property to the ancestor, and they are not words of purchase.

"In order to an application of the rule in *Shelley's case,* the words 'heirs' or 'heirs of the body' must be taken in their technical sense, or carry the estate to the entire line of heirs to hold as inheritors under our canons of descent; but, should these words be used as only designating certain persons, or confining the inheritance to a restricted class

of heirs, the rule does not apply, and the ancestor or the first taker acquires only a life estate, according to the meaning of the express words of the instrument."

And in *Hampton v. Griggs, supra,* where the subject was learnedly discussed by *Associate Justice Stacy,* it was further held as follows: "In construing a conveyance, with reference to the application of the rule in *Shelley's case,* the general or paramount intent of the donor or grantor, in the use of the technical words 'heirs' or 'heirs of the body' should be first ascertained by construing the instrument as a whole, and, should his intent, so found, be that these words should be taken with their technical or legal meaning, this meaning will control any particular intent he may have otherwise expressed; but, should they be ascertained to have been used as denoting a particular class of persons to take in remainder, as distinguished from those who would take in indefinite succession under the rules of descent, that meaning will prevail, and the first taker will acquire only an estate for life, and the rule in *Shelley's case* will not apply."

Considering the deed in question here, we are of opinion that, although the property is conveyed to Matilda Van Lear for life, and after her death to the lawful heirs of her body, these words are so qualified by what immediately follows, "who may be living at her death, and to the issue of such child or children who may die before the said Matilda," as to show that the words "lawful heirs" are not intended in their usual sense as general inheritors under our canons of descent, but are used and intended in the sense of children and passing the estate among other to such of her children as should be alive at that time, and who would take under the Schulken deed as purchasers from the original grantor and not as heirs of their mother.

This, to our minds, being the clear meaning and intent of the Schulken conveyance, that instrument passed to Mrs. Van Lear only a life estate, with remainder to her children living at her death, and to the issue of such as may have died, and on her death, defendant, her son, Robert, became the owner of one-third of the property, and he, never having parted with his interest, is asserting a rightful claim, as his Honor ruled.

In addition to the above authorities, the position finds support also in *Blackledge v. Simmons,* 180 N. C., p. 540; *Puckett v. Morgan,* 158 N. C., p. 344; *Smith v. Lumber Co.,* 155 N. C., p. 389; *Smith v. Proctor,* 139 N. C., p. 322; *Rollins v. Keel,* 115 N. C., p. 68; *Whitesides v. Cooper,* 115 N. C., p. 570.

We find no error in the disposition of the case, and the judgment of the Superior Court is

Affirmed.