SARAH V. BENTON v. MARTHA J. BAUCOM AND HUSBAND, H. M. BAUCOM.

(Filed 1 December, 1926.)

**1. Estates—Rule in Shelley's Case—Canons of Descent.**

The rule in *Shelley's case* is a rule of property as well as a rule of law, and applies when there is an estate of freehold in the ancestor of the first taker who has acquired by, through or in consequence of the same assurance which created a limitation to his heirs, used in the conveyance in its technical sense as importing a class of persons to take indefinitely in succession from generation to generation according to the canons of descent, and who take an estate of the same character or quality as the first taker, either legal or equitable, the limitation over being of an inheritance in fee or in tail.

**2. Same—Reason for the Rule.**

The present existence of the rule in *Shelley's case* is for the purpose of preventing the tying up of the title to real property and to place it in channels of commerce, and the doctrine of *cessat ratione cessat lex ipsa* (the law ceasing with the reason therefor) does not apply.

**3. Same.**

Under the provisions of a devise of a life estate to the testatrix's stepdaughter after the life of her mother, then to her "lawful heirs if any and if not to the testatrix's own children or their heirs," a fee-simple title is conveyed to the stepdaughter under the rule in *Shelley's case.*

APPEAL by plaintiff from *Schenck, J.,* at May Term, 1926, of UNION.

Civil action to quiet title and to remove cloud therefrom, arising out of a claim made by the defendant that, under her father's will, she has a contingent interest in the *locus in quo.*

Upon the facts found, a jury trial being waived, judgment was entered for the defendant, from which the plaintiff appeals.

*Vann & Milliken for plaintiff.*
*John C. Sikes for defendants.*

STACY, C. J. On the hearing the question for decision was properly made to depend upon the construction of the following item in the will of James C. Hargett:

"Item 5th. I give and bequeath to my eldest stepdaughter, Sarah Myers (now Sarah V. Benton) a home and support with her mother during her single days, and fifty acres of land at her mother's death, of the tract I now live on, to include all the buildings, to have and to hold her lifetime, and then to her lawful heirs, if any, and if not, then it is to go to my own three children, or their heirs, together with all the personal estate I have given her."

The plaintiff is the eldest stepdaughter of the testator and holds possession of the land described in the complaint, under this item of the will. The defendant is one of the three children of the testator mentioned in the latter part of said clause and claims a contingent interest in the land described therein, which she says will vest in right upon the death of Sarah V. Benton without "lawful heirs," or lawful children, her surviving, or certainly without her ever having had a "lawful heir" or lawful child. The record shows that Sarah V. Benton is above 65 years of age; that she has given birth to but one child, which was illegitimate and is now dead.

It is the contention of the plaintiff that she holds a fee-simple title to the land devised in item five above; while the defendant contends that the plaintiff takes only a life estate, or at most a defeasible fee, in the property so devised.

It is conceded that the relative merits of the controversy depend upon whether the limitations in this clause are so framed as to attract the rule announced in the celebrated English case of *Wolfe v. Shelley,* 1 Coke, 93-b, commonly known as the rule in *Shelley's case,* which, with us, has become a rule of property as well as a rule of law, and is stated by *Lord Macnaghten* in *Van Grutten v. Foxwell,* Appeal Cases, Law Reports (1897), p. 658, as follows: "It is a rule in law when the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs in fee or in tail, that always in such cases 'the heirs' are words of limitation of the estate and not words of purchase."

It is hardly necessary to observe that every part of this statement is deserving of attention, from the opening words, which declare it to be a "rule in law," to the last clause, which says that "the heirs" can never take by purchase when the rule applies.

The sources of the rule are apparently lost in the mystery that characterizes all origins. No one seems to know its author, or how it came to be laid down. Even its purpose, as well as the wisdom of its adoption, has been the subject of controversy. The better view seems to be that it sprang from the holding of lands by feudal tenure, and that its purpose originally was to prevent the lord from being defrauded of the chief fruits or seigniory, which he did not receive when an estate went by purchase. It was equally important to the tenant that the distinction between descent and purchase should be maintained. Speaking to the subject in *Williams v. Houston,* 57 N. C., 277, *Pearson, C. J.,* said: " 'The rule' was adopted for the prevention of fraud, and the substance of it is, where an estate for life is given to one and by the same conveyance the property is given to his heirs in such a manner that the

same persons are to take the same estate as they would have taken by operation of the law had the whole estate been given to the tenant for life, he shall take the whole estate, and such persons shall take by operation of law, and not as purchasers, notwithstanding the express intention was that the one should take a life-estate only and the others should take as purchasers; the principle is the same as that by which, if one seized in fee in England devises to his eldest son in fee simple, the son shall take by descent and not under the devise; for, although the intention that he shall take by the devise is express, yet such intention being in manifest fraud of the rights of third persons shall not be carried into effect."

Today the rule serves quite a different, but no less valuable, purpose, in that it prevents the tying up of real estate during the life of the first taker, facilitates its alienation a generation earlier, and at the same time, subjects it to the payment of the debts of the ancestor. *Walker v. Butner,* 187 N. C., 535; *Crisp v. Biggs,* 176 N. C., 1; *Cohoon v. Upton,* 174 N. C., 90. "It is a rule or canon of property, which so far from being at war with the genius of our institutions, or with the liberal and commercial spirit of the age, which alike abhor the locking up and rendering inalienable real estate and other property, seems to be in perfect harmony with both. It is owing perhaps to this circumstance that the rule, a Gothic column found among the remains of feudality, has been preserved in all its strength to aid in sustaining the fabric of the modern social system." *Reese, J.,* in *Polk v. Faris,* 9 Yerg., 209, 30 Am. Dec., 400.

The learned writers on the subject also disagree as to the manner in which the rule operates. It is said by many, who constitute by far the larger number, that the limitation to the heirs unites and coalesces with the limitation of the freehold to the ancestor, and thus operates to vest in the first taker a fee simple or a fee tail, as the case may be, divided or split by intervening limitations, where there are any. (There were intermediate estates in *Shelley's case* itself.) By others it is said that there is no such union or coalescence, but that the limitation to the heirs is executed in the ancestor, to whom a gift is implied, so as to vest in him another and larger estate, which swallows up the particular estate of freehold when there are no intervening limitations. *Van Grutten v. Foxwell,* 77 L. T. N. S., 170.

But whatever may have been the origin of the rule, and regardless of the mode of its operation, it is firmly established, not only as a rule of law, but also as a rule of property, in this jurisdiction, and it is our duty to observe it wherever the limitations in any deed or will call for its application. *Hartman v. Flynn,* 189 N. C., 452; *Fillyaw v. Van Lear,*

188 N. C., 772; *Bank v. Dortch,* 186 N. C., 510; *Wallace v. Wallace,* 181 N. C., 158. It is one of the ancient landmarks which the fathers have set in the law, as it relates to the subject of real property, and we should be slow to remove it. Prov., 22:28.

A restatement of the essential facts, stripped of all irrelevant matter, appearing in the case from which the rule takes its name, may aid measurably in determining its application to other facts or other limitations.

Edward Shelley, being tenant in tail general, had two sons, Henry and Richard. Henry died in his father's lifetime, leaving a daughter and his wife *enciente* with a son. The premises being in lease for years, the father suffered a common recovery to the use of himself for life, and after his death to the use of certain persons for twenty-four years, remainder to the use of the heirs male of his body lawfully begotten and the heirs male of the body of such heirs male lawfully begotten, and died before Henry's widow was delivered. Richard, the younger son, being the only heir male of his father then *in esse,* entered, and made a lease to the plaintiff. Henry's son was afterwards born, who entered and ejected Richard's lessee. Now it was a rule of the common law that the title of one in possession acquired by *purchase* could not be divested by an after-born nearer heir, but that the estate of one who took by *descent* could. (The law in this respect was changed by statute in North Carolina in 1823, now C. S., 1654, Rule 7, but without affecting the rule in *Shelley's case.*) So the great question was, "whether Richard, under the uses of the recovery, took by purchase or by descent." It was held that Richard took *quasi* by descent till the birth of Henry's son, who then became entitled. Hence, the plaintiff lost in the case and was not allowed to recover.

There is very little difference, if any, among the writers as to the things which must concur in order to give rise to the application of the rule. It is generally held: (1) that there must be an estate of freehold in the ancestor or the first taker; (2) that the ancestor must acquire this prior estate by, through, or in consequence of the same assurance which contains the limitation to his heirs; (3) that the words "heirs" or "heirs of the body," or some equivalent expression, must be used in a technical sense as importing a class of persons to take indefinitely in succession, from generation to generation, in the course marked out by the canons of descent; (4) that the interest acquired by the ancestor and that limited to his heirs must be of the same character or quality, that is to say, both must be legal or both must be equitable, else the two would not coalesce, or merge, whichever be its mode of operation; and (5) that the limitation to the heirs must be of an inheritance in fee or in

tail, and after the similitude of a remainder. See note, 29 L. R. A. (N. S.), 963; 24 R. C. L., 887; *Hampton v. Griggs,* 184 N. C., 13.

Speaking of the rule in *Shelley's case* and answering the arguments leveled against it, *Dorsey, C. J.,* in *Horne v. Lyeth,* 4 Har. & J., 431, had the following to say: "That to disregard rules of interpretation sanctioned by a succession of ages, and by the discussions of the most enlightened judges, under pretense that the reason of the rule no longer exists, or that the rule itself is unreasonable, would not only prostrate the great landmarks of property, but would introduce a latitude of construction, boundless in its range and pernicious in its consequences."

The use of words is subject to such variety of combination that often the interpretation or construction of deeds, and especially of wills, is fraught with puzzling effect upon those who are required to determine their meaning. It is therefore necessary to establish rules, and important to uphold them, so that those who are called upon to advise may safely give opinions on titles to real property.

We had occasion in *Hampton v. Griggs,* 184 N. C., 13, to consider the differences appearing in a number of cases where the rule was held to be applicable as distinguished from those in which it was held to be inapplicable. Tested by what was said in that case, we think the limitations in the instant will call for the application of the rule, and vest in Sarah V. Benton a fee-simple estate to the lands described in the complaint. The devise in *Wool v. Fleetwood,* 136 N. C., 460, is strikingly similar to the one now presented for construction. What was said in that case would seem to be controlling here. It appears to be an authority for the plaintiff's position.

Reversed.