Ada B. CRAWFORD, Appellant
(Plaintiff below),

v.

Alvin BARBER, John Barber, Joyce Barber, Dorothy Burden, Sarah Barber, Alvin Barber, as Administrator of the Estate of Perry Barber, and John Barber, Conservator of Sarah Barber, Appellees (Defendants below).

No. 3141.

Supreme Court of Wyoming.
Oct. 17, 1963.

James E. Barrett, Lusk, for appellant.
Maurer & Garst, Douglas, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Ada B. Crawford, the widow and sole devisee of David W. Crawford, brought an action for declaratory judgment requesting the court to decree that she was entitled to a one-half interest in certain real property which originally belonged to the husband's mother, Mary E. Crawford, who died testate, leaving all her real estate, including 320 acres of land in Niobrara County, Wyoming, to her second husband for life. Of significance here are four paragraphs of the will dealing with the further disposition of the property:

"Third: Upon the death of my beloved husband, Thomas G. Crawford, I then give, devise and bequeath all of my property, real, personal and mixed, of whatsoever kind and wheresoever situated, unto my two beloved sons, David W. Crawford and Perry A. Barber for their natural lives, each to have one half thereof, that is to say, each shall have a life estate in one half of my property. The taxes and upkeep of said property shall first be deducted and the balance of the income shall be divided equally between my said two sons. In the event of the death of either one of my sons, it is then my will that this arrangement shall continue until the death of my other son.

"Fourth: Upon the death of my beloved son, David W. Crawford, I then give, devise and bequeath one half of all my property, real, personal and

mixed, of whatsoever kind and wheresoever situated, unto the heirs of his body who may be living at that time. If any of his heirs shall have died before his death, then the share of said heir shall go to the children of said heir. If said heir shall have died without children, then said share shall be divided among the other heirs of the said David W. Crawford. If the said David W. Crawford shall die without any children surviving him, then it is my will that his half shall be divided among his heirs according to the rules of descent and distribution of the State of Illinois."

Paragraph five was identical to paragraph four except that the name of the other son, Perry A. Barber, was substituted for David W. Crawford.

"Sixth: If either of my beloved sons, David W. Crawford and Perry A. Barber shall have died before my death, then it is my will that the one half of my property shall go to the children of said son so deceased. If he should die without children surviving then said share shall go to his heirs according to the rules of descent and distribution of the State of Illinois."

The case was tried on a stipulation of facts, which in addition to those above mentioned recited that testatrix's husband predeceased her; that her son, Perry, died in November 1956, leaving as his sole heirs his wife and four children, Alvin Barber, John Barber, Dorothy Burden, and Joyce Burlingame; and that her son, David, died testate in January 1960, having no descendants and naming as sole devisee his wife, Ada B. Crawford. The court found that the will of Mary E. Crawford could be interpreted from the instrument itself with no necessity of applying the rule in Shelley's Case and that under the rules of descent and distribution of the State of Illinois, plaintiff, Ada B. Crawford, was entitled to only 25 percent interest in the 320 acres. .

From this judgment plaintiff has appealed, contending that the court erred in its finding that the rule in Shelley's Case does not apply and that its application would have resulted in plaintiff's being adjudged the owner of an undivided one-half interest in and to the real estate in question. Plaintiff asserts, "There can be no question but that Wyoming has recognized the application of the Rule in Shelley's Case," citing Singleton v. Gordon, 60 Wyo. 26, 144 P.2d 138. It is true that we recognized the existence of the rule and stated some principles concerning it in the Singleton case. However, the court found it unnecessary to decide whether the facts of that case came within its purview. Now that the subject is again presented, it may be desirable to amplify our views.

The reason for the development of the rule in Shelley's Case and the rationale for its continued existence are topics about which there have been much discussion and disagreement, with comments ranging from faint praise to bitter condemnation of the rule. Illustrative analyses and summaries are found in Simes and Smith, Law of Future Interests, §§ 1541–1572 (2 ed.); Annotation, 29 L.R.A.,N.S., 963; 3 A.L.I. Restatement, Property, § 312 (1940); and see 45 Ill.L.R. 173 and 2 Wyo.L.J. 91.

The situation presented by the instant case is at best an unfortunate example of heteronomy. We are asked to apply the rule in Shelley's Case for the reason that it was part of the common law of England, which the legislature provided as the rule of decision in this State, § 8–17, W.S.1957, but ironically England abolished the rule in Shelley's Case by the Law of Property Act of 1925. Further anomaly arises from the fact that the legislature in Illinois, like those in a majority of the states, assumed a positive attitude regarding the propriety of the rule and passed a statute abolishing it. Ill.Rev.Stat.1957, c. 30, §§ 186, 187. We are cognizant of the nullification of the rule in Shelley's Case by the courts in at least two jurisdictions of

the United States on the ground that it is inapplicable to their social institutions. This court stated in Fuchs v. Goe, 62 Wyo. 134, 163 P.2d 783, 792, 166 A.L.R. 1329, "we have by statute * * * adopted the common law so far as same is of a general nature and not inapplicable in this state * * *. The meaning of the word 'applicable' in such a context has been thus defined: * * * 'in adopting the Common Law, * * * it must be * * * applicable to the habits and condition of our society, and in harmony with the genius, spirit and objects of our institutions.'" Under such a holding, we are doubtful that the rule in Shelley's Case could be applicable in Wyoming. Certainly, in the light of the mentioned trouble and confusion, there should be no occasion to apply the rule with blind rigidity.

Addressing ourselves to the present litigation, we find the first and the last sentences of paragraph four of especial interest. The first because upon the death of the two sons the testatrix purports to give one-half of her property to the heirs of David's body who may be living at that time. An objective reading of the entire will clearly shows that when she used the words "heirs of his body" she had in mind his children, Hodam v. Jordan, E.D.Ill., 82 F.Supp. 183; Simes and Smith, Law of Future Interests, § 1549, p. 444 (2 ed.); and had David left children surviving him, the rule should not have applied. However, he died childless, thereby rendering pivotal the last sentence of the paragraph which stated that in such event his half should "be divided among his heirs according to the rules of descent and distribution of the State of Illinois."

■■ In determining whether such provision is within the rule in Shelley's Case, we observe that four of the basic prerequisites for the application of the rule are present: namely, that there was an estate of freehold in the ancestor, David; that he acquired this estate in consequence of the same instrument, the will, which contained the limitation to his heirs; that

the interest of David and the heirs was of the same character or quality; and that the limitation to the heirs was of an inheritance in fee made by way of remainder. 47 Am.Jur. Shelley's Case, Rule in, § 8. However, we do not think that the word "heirs" is used in a technical sense so as to satisfy the fifth requirement. Judge Blume said in the Singleton case, 144 P. 2d at 141, that if this word was not used in a technical sense but rather as a description of the persons to take from the grantor the rule in Shelley's Case would not be applicable. It is our view that such rule does not apply in situations of this nature unless the remainder is limited to heirs in an indefinite line of inheritable succession from generation to generation. Donald v. Troxell, Tex.Civ.App., 346 S. W.2d 398; Turner v. Monteiro, 127 Va. 537, 103 S.E. 572, 13 A.L.R. 383; Benton v. Baucom, 192 N.C. 630, 135 S.E. 629; and see 47 Am.Jur. Shelley's Case, Rule in, § 12. This we understand was the English approach, and we view it as the correct approach, notwithstanding the fact that there is respectable American authority to the contrary, 3 A.L.I. Restatement, Property, § 312, comment "f" (1940).

Affirmed.

Mr. Justice HARNSBERGER (concurring).

Section 34-41, W.S.1957, making unnecessary the term "heirs" or other words of inheritance to create an estate in fee simple or to pass a lesser estate (for instance, a life estate with remainder over) rendered the Rule in Shelley's Case obsolete in this jurisdiction because the words, "heirs," "heirs of the body," "heirs of the blood," or any similar reference, were thereby robbed of significance as words of *limitation*. Consequently, when such words are used after grant of life estate, they merely designate the remaindermen.

The intention of the testatrix to create a lesser or life estate in her son David W. Crawford is clear and unmistakable. Had she inteded to devise a fee simple

estate to her husband, Thomas G. Crawford, Paragraph Third of the will was unnecessary. Had she intended to give a remainder over in fee simple to her sons, David W. Crawford and Perry A. Barber, the words in Paragraph Third, "for their natural lives, each to have one half thereof, that is to say, each shall have a life estate in one half of my property," would not have been used, and, similarly, Paragraphs Fourth, Fifth and Sixth would not have been in the testament. There can be no legitimate doubt but that the testatrix believed and understood that she had left her property, first, for life to her husband; second, after her husband's death, to her two sons share and share alike for their lives; third, upon the death of both sons, the share of each such son to his own heirs of his body in fee simple, if any such heirs were living at the time of death of the ancestor from whom they would take, but, if none such heirs were so living, then to the children of such heirs, if any, in fee simple, and, if none were living, then to the general heirs in fee simple.

The Rule in Shelley's Case places a technical, legalistic meaning and significance to the word "heirs" as a word of limitation, which is neither known nor understood by the laity. By its enactment of § 34–41, W.S.1957, our legislature, by plain implication, has as effectively renounced and abrogated the Rule in Shelley's Case as being definitive of the extent of an estate passed, as if the statute had expressly repealed the same.

It is the duty of courts to give full effect to legislative intendment, especially in its efforts to erase the technical, the labored reasonings, finely drawn distinctions, and the fictions, which were implanted in the common law as it came to us in 1607, as rules of decision only, but which are no longer appropriate or controlling.

This principle announced in Fuchs v. Goe, 62 Wyo. 134, 174, 163 P.2d 783, 798, 166 A.L.R. 1329, holding this court will not follow the common law adopted by § 8–17, W.S.1957, as a rule of decision when it is not applicable to the habits and conditions of our society or its circumstances, stands on even firmer grounds where the legislature has erased the need for the very words upon which the Rule in Shelley's Case is predicated.

These are additional reasons to deny the widow more than 25 percent of the property of David W. Crawford.