LEWIS KING and wife and others v. E. M. FOSCUE.

*Landlord and Tenant—Lease by Tenant for life—Remainder-*
*man—Constitutionality of Act—Agency.*

1. A lease of land made by a tenant for life terminates at his death, but by statute the lease is continued to the end of the current lease-year that the tenant may gather his crop.

2. But, in such case, the remainderman is entitled to a part of the rent proportionate to the part of the year elapsing after the termination of the life estate to the surrendering of possession to the remainderman. THE CODE, § 1749.

3. The statute embraces a lease for a single year, although it provides in terms "for any lease for years."

4. The legislature has power to regulate the method of transfer of property from one to another and hence the act above mentioned is constitutional.

5. Where an agency is denied or repudiated, no demand upon the agent is necessary before suit brought.

(*Gee* v. *Young*, 1 Hay., 17; *Poindexter* v. *Blackburn*, 1 Ired. Eq., 286, cited and approved.)

CIVIL ACTION, tried at Spring Term, 1884, of JONES Superior Court, before *Shepherd, J.*

The action was commenced in a justice's court, and the plaintiffs complained that the defendant owed them ninety-one dollars for rents received by him from the lands of the feme plaintiff. The defendant denied the allegation.

It appears that one Harrison was tenant for life of certain lands in Jones county, and that the feme plaintiff was entitled to the remainder in fee therein; that Harrison in his life-time leased the land to a tenant for the year 1881, reserving certain rent in kind of the crops to be produced thereon ; that Harrison died on the 14th of August in that year, leaving a last will and testament, and appointed the defendant executor thereof, and by which he gave him (the

defendant) his whole estate; that the will was duly proved and the defendant qualified as executor, and in the fall of said year collected the whole of the rents due under the said lease.

The feme plaintiff sues to recover such part of the rents collected by the defendant as she may be entitled to in remainder, demanding ninety-one dollars, and the justice of the peace gave judgment in favor of plaintiff for thirty-five dollars, and she appealed to the superior court.

On the trial in the superior court issues were submitted to the jury, who responded as follows:

1. Did defendant, in consideration of being allowed to collect the rents without objection on the part of the plaintiffs, promise to pay plaintiffs their share of the same? Answer—Yes.

2. If so, what amount is due to plaintiffs? Answer—$81.07.

The court instructed the jury, as to the first issue, that they could only consider such part of the evidence as tended to show a promise by defendant to pay plaintiffs prior to the collection of the rents, and that plaintiffs were entitled to a proportionate part of the rents under THE CODE, § 1749. To the latter part of this instruction the defendant excepted.

There was no evidence to show any demand by plaintiffs on the defendant for the rents, before the action was brought.

After verdict the defendant moved for judgment *non obstante veredicto*, on the grounds, first, that under the findings of the jury in response to the first issue, the defendant was a mere agent of the plaintiffs, and a demand was necessary before the action could be sustained; and secondly, that the feme plaintiff was not entitled to any part of the rents, and therefore the promise to pay was without consideration. The court denied the motion, and the defendant excepted and appealed from the judgment rendered.

KING *v.* FOSCUE.

No counsel for plaintiffs.

*Messrs. Strong & Smedes,* for defendant.

MERRIMON, J. In this case, the lease executed by the owner of the life estate in the lands terminated upon his death, because he could not let the lands for a longer term than the period of his own life. He could not lease that which did not belong to him. Upon his death, the estate of the remainderman at once began, and a lease made by him terminated.

The statute, (THE CODE, § 1749) however, continues the lease in lieu of emblements in such a case, to the extent of occupancy on the part of the tenant until the end of the lease-year current at the time of the death that terminated it, to the end that he may mature, care for and gather the crops; and it provides, that he shall surrender possession to the succeeding owner of the land at the end of that year, and pay to him (the remainderman in this case) a part of the rent accrued since the last payment of rent became due, proportionate to the part of the period of payment elapsing after the termination of the estate of the lessor, until the time of such surrender of possession on the part of the tenant to the succeeding owner; and it likewise provides, for compensation to the tenant for tillage and seed of any crop not gathered or matured at the expiration of such current lease-year from the person succeeding to the possession.

The lease mentioned in this case, is for but one year, and it is insisted that the statute mentioned does not embrace such leases, because by its terms it applies to leases for more than one year. We think otherwise, and that such a construction would defeat in some measure the purpose of the legislature.

Although the statute provides in terms for " any lease *for years* of any land let for farming," &c., nevertheless, it embraces a lease for a single year. Its plain purpose is to ex-

tend the lease for the current year to the extent of occu-
pancy on the part of the tenant, to enable him to mature
and gather the crops, and make provision in respect to the
same as to rents accrued since the last payment, and to
compensate the tennnt for tillage and seed of any crops not
gathered or matured at the end of the year. The necessity
for such a statutory regulation applies quite as strongly to
a lease for a single year, as to one for two or more years.
The main object is to provide, not so much for leases *for years*,
as for a lease, whether for a year, or for years, terminated
by the happening of some uncertain event that puts an
end to the estate of the lessor. By the common law, "the
tenant for life, or his representatives, shall not be prejudiced
by any sudden determination of his estate, because such a
determination is contingent and uncertain. Therefore, if a
tenant for his own life sows the lands, and dies before har-
vest, his executor shall have the *emblements* or profits of the
crop ; for the estate was determined by the *act of God*, and
it is a maxim in the law, that " *actus dei nemini facit inju-
riam.*"

" The representatives, therefore, of the tenant for life shall
have the emblements to compensate for the labor and ex-
pense for tilling, manuring, and sowing the lands, and also
for the encouragement of husbandry, which being a public
benefit, tending to the increase and plenty of provisions,
ought to have the utmost security and privilege the law can
give it." 2 Bl. Com., 122; Taylor on L. & T., 355; *Gee* v.
*Young*, 1 Hay., 17; *Poindexter* v. *Blackburn*, 1 Ired. Eq.,
286.

The purpose of the statute is to regulate this subject, and
very largely in the interest of the succeeding owner of the
land, and its spirit clearly embraces a lease for a year. And
indeed the phrase employed in the statute, " a lease for
years," is used in a technical sense, like the similar phrase,
" an estate for years," by which is meant, an estate for a

definite period of time, and it embraces a lease for a single year.   2 Bl. Com. 140.

The objection that the statute under consideration is unconstitutional cannot for a moment be sustained.   It is but a reasonable legislative regulation of the method and means whereby the remainderman, or succeeding owner, comes into possession and complete enjoyment of his estate.   And indeed, as we have said, it is intended to, and generally does promote his interest and convenience.   The legislature clearly has power to regulate the method of the transfer of property from one party to another, and although such regulations frequently incidentally affect the value, and sometimes the stability of private property, this cannot be regarded as interfering with vested rights.   Such a legislative power is essential, and is frequently exercised in many ways.   Cooley Const. Lim., 358, (1st Ed.)

The statute extended the lease mentioned in this case in lieu of emblements, from the date of the death of the tenant for life to the extent of occupancy on the part of the tenant, for the purpose of maturing and gathering the crops, to the end of the current lease-year; and by virtue of the statute, the *feme* plaintiff was entitled to a part of the rent, proportionate to the part of the year elapsing between the termination of the estate of the lessor, the tenant for life, and the surrender of the possession of the land to her.

The defendant, however, collected the whole of the rents due under the lease mentioned, and failed to pay the feme plaintiff any part of them.   It is not denied that if she is entitled, he has her part of the rents.   It is plain that she is entitled, and quite as plain that she can maintain her action for the money had and received, as well as upon the express promise to pay the rents.

It is insisted that the first issue submitted to the jury indicates and assumes that the defendant was the agent of the plaintiff to collect the rents; and, therefore, she cannot

maintain this action until she first makes a demand upon the defendant for her part of the rents.

No formal pleadings were filed, the action having been begun in the court of a justice of the peace, where the pleadings are very summary and informal. Precisely how the plaintiff declared does not appear. There is nothing in the record that shows that the defendant was the agent of the plaintiff. The issue does not treat him as such agent; it seems to suggest that the feme plaintiff did not object to the collection of the rents by him, and he promised to pay her share thereof. But if he were such agent, as he now insists, he repudiated the agency by the denying the right of the plaintiff to any part of the rents. He put himself in hostility to her, and hence no demand was necessary. *Waddell* v. *Swann*, decided at this term, *ante* 108.

There is no error, and judgment must be entered in this court for the plaintiff. Judgment accordingly.

No error. Affirmed.