WILLIAM M. WELLS, JR.; ALICE ELIZABETH WELLS ROMANEK; AND JOSIE M. WELLS, GUARDIAN OF REDMOND S. WELLS, PLAINTIFFS V. THE PLANTERS NATIONAL BANK AND TRUST COMPANY, AS ANCILLARY ADMINISTRATOR OF THE ESTATES OF WILLIAM M. WELLS, SR., AND PEARL KENT WELLS, AND AS TRUSTEE UNDER CERTAIN INTER VIVOS TRUSTS CREATED BY WILLIAM M. WELLS, SR., UNDER DATES OF FEBRUARY 4, 1956, AND FEBRUARY 6, 1956; LILLIAN KENT DICKENS; WALTER GLASS KENT; AND S. GARLAND KENT, DEFENDANTS.

(Filed 23 July, 1965.)

1. Trusts § 6—

A trust providing that the net income therefrom should be paid to a designated person for life and at the death of such person to his heirs does not come within the Rule in *Shelley's* Case, since the interest of the life beneficiary is an equitable and that of the heirs a legal estate.

2. Wills § 33—

A devise of land to designated beneficiaries "to share and share alike" is a devise in fee. G.S. 31-38.

3. Trusts § 6; Wills § 39— Power of disposition may be exercised by changing the quality of the estate in remainder without changing identity of remaindermen.

By trust instruments and by will the owner of lands provided that the income therefrom should go to a life beneficiary and at the death of the life beneficiary should go in fee to two of his children and in trust for the life of the third child, remainder in this third to such child's heirs, but the instruments also provided that his wife, the life beneficiary in the main instrument, should have the power to dispose of the entire *corpus* of the trust by will with the same effect as if she were the owner of the *corpus* in fee. By will the wife provided that the fee should go to testator's children, without making any provision for a trust estate for the third child. *Held:* The third child took the fee in his share free from the trust as appointee under the wife's will.

**4. Estates § 4—**

The common law rule of non-apportionment of rents between the life tenant and the remaindermen has been amended in several respects by statute, G.S. 42-6, G.S. 42-7, G.S. 34-4, so that when there is successive ownership under a trust or will or other instrument, the rents are to be apportioned between the life tenant and the remaindermen. *In re Estate of Galloway*, 229 N.C. 547, and *Trust Co. v. Frazelle*, 226 N.C. 724, distinguished in that in those cases the successive ownerships were not under a trust, will or other instrument.

**5. Same—**

The land in question was held in trust for the payment of income to trustor's wife for life with remainder in fee to his children. At the time of the death of the life beneficiary the lands were leased at a rental of one-third of the sale price of the tobacco crops grown on the lands, to be paid on the dates the tenants sold tobacco. *Held:* The dates of the sale of tobacco determine "periodic payments", G.S. 37-4, for "fixed periods", G.S. 46-6, and therefore rents received for the year during which the life beneficiary died are to be apportioned between the personal representative of the life beneficiary and the remaindermen. The same rule of apportionment applies to Federal Grain Program payments under 57 Stat. 301, § 131, which are in effect payments of annual rent.

**6. Same—**

Upon the death of the life beneficiary of a trust, the ordinary expenses incurred in the administration and management of the trust, including charges for labor and supplies, building repairs, property insurance and taxes, and trustee's commissions, must be apportioned in the same percentages as the apportionment of rents. G.S. 37-12(1).

APPEAL by plaintiffs from *Mintz, J.,* December 14, 1964 Civil Session of NASH.

Action for a declaratory judgment: (1) to determine the distribution of income from farm leases made, during the life of the beneficiary, by the trustee of an *inter vivos* trust known as the Pearl K. Wells Trust; and (2) to construe the exercise of the power of appointment, by the beneficiary, over the remainder of the trust corpus.

The facts are not in dispute. Plaintiffs and defendants each moved for judgment on the pleadings, which establish these facts: Plaintiffs, William M. Wells, Jr., Alice Wells Romanek, and Redmond S. Wells (R. S. Wells) are children of the marriage of William M. Wells, Sr. (Wells), now deceased, to Josie M. Wells. As a result of congenital injuries, R. S. Wells is incompetent and brings his action by his guardian, Josie M. Wells. In 1941 Wells obtained a divorce from Josie M. Wells, and subsequently married Pearl K. Wells. To them no children were born. By an instrument dated February 3, 1956, Wells created an *inter vivos* trust for the benefit of Pearl K. Wells (Pearl K. Wells

Trust). Defendant Bank was made trustee, with plenary powers to preserve, manage, sell, rent (for a term which might run beyond the duration of the trust), and exchange the trust property, which consisted principally of farm lands, during the lifetime of Pearl K. Wells, who was "entitled to all the income from the corpus of the trust." The trustee was empowered, if necessary, to invade the principal for her support. At the death of Pearl K. Wells, Wells directed, by paragraph 7 of the instrument, that the trust "shall be terminated and the corpus remaining shall be equally divided among my three children," William M. Wells, Jr., Alice W. Romanek, and R. S. Wells, "share and share alike absolutely and in fee simple, this being a vested remainder." Notwithstanding this limitation over, Wells gave to his wife "the power to dispose of the entire corpus of this trust, free of the trust, by her will, but only by making specific reference to this power, as she may see fit, with the same effect as if she were the owner of said corpus free of the trust." Wells reserved the right, by written instrument delivered to the trustee, to revoke or amend the trust at any time during his life.

On February 6, 1956, Wells amended paragraph 7 of the Pearl K. Wells Trust by a provision that the undivided interest of R. S. Wells "in the trust assets remaining at the termination of the trust shall vest in Planters National Bank & Trust Company of Rocky Mount, North Carolina, as trustee for a trust known as the 'R. S. Wells Trust' created by me on February 4, 1956, instead of the said R. S. Wells himself, and subject to all the terms and conditions of the instrument creating the said R. S. Wells Trust." The instrument creating the R. S. Wells Trust recited the handicap of the beneficiary and his need for assistance in the management of his affairs. To insure his support, Wells transferred to defendant Bank certain property, including farm lands, and empowered it to operate, manage, sell, invest and reinvest, and otherwise deal with the trust assets in its discretion during the lifetime of R. S. Wells. The trustee was directed to pay him, in periodic installments, such sums as it deemed necessary for the proper support of him, his wife, and his children, if any, by her. Upon the beneficiary's death the trustee was directed to pay his funeral expenses and to terminate the trust by conveying and distributing the trust assets to "the heirs and distributees of the said R. S. Wells (excluding any adopted child or children) as if the said R. S. Wells died intestate under the intestacy laws of North Carolina."

On February 2, 1956, Wells, by the "Mercer Farm Trust Indenture," created a trust similar to the Pearl K. Wells Trust and the R. S. Wells Trust for the benefit of his first wife, Josie M. Wells, and R. S. Wells during the lifetime of Josie M. Wells and one year thereafter. At the

end of the calendar year after the death of Josie M. Wells, defendant Bank as trustee was directed to terminate the trust by conveying the corpus to Wells' three children, plaintiffs, in fee. On February 6, 1956, Wells amended this trust, as he had the others, to direct a conveyance of the share of R. S. Wells to defendant Bank as trustee of the R. S. Wells Trust.

On February 4, 1956, the same day he created the R. S. Wells Trust, Wells executed his last will and testament. In Item Four thereof he "devised and bequeathed to the defendant, the Planters Bank and Trust Company, as trustee under the Pearl K. Wells Trust, one-half of the adjusted gross estate as finally determined for federal estate tax purposes, less the aggregate value of other property which qualified for the marital deduction. . . ." In the same item he referred to the power of appointment he had given his wife in the instrument creating the Pearl K. Wells Trust and stated, "These provisions are reimposed by this will."

In Item Five of the will, the residuary clause, he devised all the rest and residue of his net estate to his three children, plaintiffs, share and share alike in fee simple. By a codicil, dated February 6, 1956, Wells amended Item Five to give the share of R. S. Wells in the residue of his estate to defendant Bank as trustee to be managed and disposed of under the terms of the R. S. Wells Trust.

On September 7, 1961, William M. Wells, Sr., died testate while residing in Reno, Washoe County, Nevada. The primary administration of his estate is being had there, with an ancillary administration in North Carolina by defendant Bank. Subsequent to January 17, 1963, First National Bank of Nevada, as the executor of Wells' estate, by agreement with defendant Bank, as trustee, allocated to the Pearl K. Wells Trust, in satisfaction of the marital-deduction devise and bequest, certain farm lands located in North Carolina, including the farms identified as the "Barron farm," the "Kansas-Weaver-Langley farm," and the "Moore farm." Although these farms were not officially allocated until after the death of Pearl K. Wells, it is conceded that defendant Bank, prior to the allocation and prior to her death, had, as trustee of the Pearl K. Wells Trust, leased them.

On June 28, 1962, Pearl K. Wells died testate while a resident of Reno, Nevada. Defendant Bank is the ancillary administrator of her estate in North Carolina. By her will dated May 3, 1961, with specific reference to the power of appointment given her by her husband, Pearl K. Wells devised certain farm lands in North Carolina, including the Barron, the Kansas-Weaver-Langley, and the Moore farms, allocated to the Pearl K. Wells Trust, "to the three children of (her) husband William Mercer Wells, share and share alike."

Defendant Bank, as trustee under the Pearl K. Wells Trust, leased the Barron farm for the calendar year 1962 to John R. Highsmith, and also leased the Kansas-Weaver-Langley farm for the calendar year 1962 to S. R. Cockrell. Under these leases it was provided that defendant Bank, as trustee-lessor, would receive as rent one-third of the tobacco crops harvested on such farms, which rents would be payable on an "as sold" basis at the warehouse in Rocky Mount. These leases also provided that defendant Bank, as trustee-lessor, would be responsible for certain expenses incurred in connection with the leased farms, namely, maintenance expense, insurance on buildings, real-estate taxes, and one-third of the expense incurred for lime and insurance on the tobacco crops. For the year 1962 these expenses amounted to $5,638.71.

After the death of Pearl K. Wells, the tobacco grown on the Barron farm and on the Kansas-Weaver-Langley farm was harvested and sold, and defendant Bank received the total sum of $19,262.88, one-third of the sale proceeds. In addition to the foregoing sum, defendant Bank received the sum of $293.84 under the Federal Grain Program maintained on the Moore farm, of which it received $140.26 on March 24, 1962, and the balance of $153.58 on August 4, 1962.

A controversy immediately arose between plaintiffs and defendant Bank, as ancillary administrator of the estate of Pearl K. Wells and as trustee of the R. S. Wells Trust and the Pearl K. Wells Trust; and between plaintiffs and the three individual defendants, beneficiaries under the will of Pearl K. Wells.

Plaintiffs contend: (1) They are entitled to the Federal Grain Program payment of $153.58 which was made to the trustee after the termination of the life estate. (2) The expenses of $5,638.71 "are not the proper subject of apportionment" and "should be first paid out of income realized by said trust," including the income of $140.26 the trust received from the Federal Grain Program on March 24, 1962. (3) They are entitled to the whole of the tobacco rents in the amount of $19,262.88, to the exclusion of the estate of Pearl K. Wells.

Defendants contend: (1) The sum of $293.84 received under the Federal Grain Program belongs to the estate of Pearl K. Wells. (2) Both the tobacco rent and the expenses should be apportioned equally between plaintiffs and the estate of Pearl K. Wells.

A further dispute exists between plaintiff R. S. Wells and defendant Bank, as trustee of the R. S. Wells Trust. He contends that his share in the remainder of the Pearl K. Wells Trust passed direct to him in fee under her will. Defendant Bank contends that his interest passed to it as trustee of the R. S. Wells Trust.

Judge Mintz allowed defendants' motion for judgment on the pleadings and decreed, *inter alia:*

"1. That the 1962 rents and profits from the Barron Farm, the Kansas-Weaver-Langley Fârm, and the Moore Farm, received by The Planters National Bank and Trust Company, be apportioned Seven Thousand One Hundred Five and 93/100 Dollars ($7,105.93) to the Estate of Pearl K. Wells, Deceased, and the sum of Six Thousand Eight Hundred Twelve and 08/100 Dollars ($6,812.08) be apportioned to the plaintiffs, share and share alike." (Plaintiffs' recovery is one-half of the tobacco rents after deducting the expenses; the estate's recovery is that figure, plus the Federal Grain Program payment.)

"2. That The Planters National Bank and Trust Company, Trustee under the R. S. Wells Trust Indenture, is entitled to receive as an asset of the trust the undivided interest of R. S. Wells in the Barron Farm, the Kansas-Weaver-Langley Farm, and the Moore Farm, and any other property appointed to him by the will of Pearl K. Wells."

Plaintiffs excepted to the signing of the judgment and appealed.

*Poyner, Geraghty, Hartsfield & Townsend by Arch. E. Lynch, Jr., for plaintiffs, appellants.*

*Battle, Winslow, Merrell, Scott & Wiley by F. E. Winslow for defendants, appellees.*

SHARP, J. In entering his declaratory judgment Judge Mintz noted that the action involved two controversies: the first, between the plaintiff remaindermen and defendant Bank as ancillary administrator of the life tenant, Pearl K. Wells, over certain rents and expenses for 1962; the second, between one of the plaintiffs, R. S. Wells, and defendant Bank as trustee as to what estate he takes in the remainder of the corpus of the Pearl K. Wells Trust. Judge Mintz recognized that there is a misjoinder of parties and causes. His judgment recites that to this misjoinder "no objection has been raised in the interest of convenience and economy." We shall first consider the question raised by defendant Bank as trustee of the Pearl K. Wells Trust.

Did the interest of R. S. Wells in the corpus of the Pearl K. Wells Trust pass to him in fee, freed of the trust, as appointee under the will of Pearl K. Wells? Or did it pass, under the terms of the *inter vivos* trust, to defendant Bank as trustee for R. S. Wells for life and at his death to his heirs (excluding any adopted child) in fee? The answer is that R. S. Wells owns his share in fee, freed of the trust, as appointee. By the terms of the instrument creating the Pearl K. Wells Trust, the income beneficiary was given a general power of appointment to dis-

pose of the corpus of the trust by her will just as if she herself owned the corpus free of the trust. She could have appointed to her own estate. *Hicks v. Ward,* 107 N.C. 392, 12 S.E. 318; 41 Am. Jur., Powers §§ 4, 55 (1942); Simes & Smith, Future Interests § 875 (2d Ed. 1956). Had Pearl K. Wells failed to exercise the power, the share of R. S. Wells in the remainder of the corpus would have become, under the terms of the trust instrument as amended February 6, 1956, a part of the R. S. Wells Trust. R. S. Wells' interest in this trust was an equitable life estate. He was entitled to receive from the income or principal such sums as the trustee should determine to be "necessary and proper" for his support and that of his dependents. At his death the corpus of the trust was given to his heirs generally. Since the interest of R. S. Wells in the trust was an equitable one and that of his heirs a legal one, the Rule in *Shelley's* Case would have no application. *Benton v. Baucom,* 192 N.C. 630, 633, 135 S.E. 629, 631. By the exercise of her power of appointment, Pearl K. Wells devised the remainder in all North Carolina farm lands which constituted a part of the trust, with the exception of one designated farm, "to the three children of (her) husband, William Mercer Wells, share and share alike." This was a devise of a fee to each child. G.S. 31-38. By the exercise of her power of appointment she did not disturb the vested remainder which William M. Wells, Jr. and. Alice Wells Romanek took under the Pearl K. Wells Trust, but she converted R. S. Wells' interest in the remainder of the trust corpus from an equitable life estate (via the R. S. Wells Trust) to a fee. Thus, as to him she did not merely parrot the language of the trust. A different estate passed to him through her exercising her power, to do which did not require her, as defendant Bank contends, to divert entirely the interest of R. S. Wells to another person. It is obvious that by her devise of that property to R. S. Wells in fee, Pearl K. Wells changed, to that extent, her husband's plan that during the life of R. S. Wells defendant Bank should manage the property the settlor had provided for his son's support. In 1956 he had expressed this intent in the instrument creating the Pearl K. Wells Trust, the Mercer Farm Trust, the R. S. Wells Trust, as well as in his last will. At the same time he gave her, notwithstanding, specific power to change his plan with respect to the corpus of the Pearl K. Wells Trust, even to the extent of substituting other beneficiaries for his three children. She changed the plan for R. S. Wells by language in her will which "is clear and has a recognized legal meaning" leaving "no room for construction." *Rhoads v. Hughes,* 239 N.C. 534, 535, 80 S.E. 2d 259, 259. Since she did so, the settlor's over-all intent, which defendant Bank stresses so forcibly, is quite irrelevant. We hold that R. S. Wells takes his interest in the corpus of

the Pearl K. Wells Trust in fee simple as a result of the exercise of her power of appointment.

Are the rents, in amount of $19,262.88, from the 1962 tobacco crops raised on those farms which plaintiffs acquired as successors to Pearl K. Wells subject to apportionment between them and the ancillary administrator of Pearl K. Wells, the life beneficiary of the trust? Contending that they are not, plaintiffs rely on *In re Estate of Galloway,* 229 N.C. 547, 50 S.E. 2d 563; *Trust Co. v. Frazelle,* 226 N.C. 724, 40 S.E. 2d 367, and other cases which apply the well-established rule that "rent which is due at the time of the death of the lessor passes to his personal representative for administration as an asset of the decedent's estate, while rent which becomes due after that becomes the property of the heirs or devisees who are entitled to the reversion, as an incident thereof." *Trust Co. v. Frazelle, supra* at 728, 40 S.E. 2d at 371; *accord,* 32 Am. Jur., Landlord and Tenant § 457 (1941).

At common law where the landlord dies intestate between rent days, there is no apportionment of rents which are unsevered and not then due, and the right to all rent accruing after the decedent's death devolves upon the heirs of the decedent lessor. 32 Am. Jur., Landlord and Tenant § 448 (1941); 2 Mordecai's Law Lectures 1367 (2d Ed. 1916). "Thus, ordinarily, *in the absence of statute,* there is, upon the death of a lessor, no right to an apportionment of rents to accrue as between the administrator, executor, or trustee and the heir, devisee, or trust beneficiary." 32 Am. Jur., Landlord and Tenant § 457 (1941). (Italics ours.) The rents were said to follow the reversion. Hence, where *A* devised his personalty to *B* and Blackacre, rented to *T* and in *T*'s possession as lessee, to *C,* and the rent on Blackacre fell due after *A*'s death, *C,* not *B,* was entitled to all the rent, none of it being apportioned to *B* as personalty owned by *A* at the time of his death. And where *A* died intestate, his heirs, not his personal representative, were entitled to the whole of the rent. Interest, on the other hand, was apportionable between persons successively entitled. 33 Am. Jur., Life Estates, Remainders, and Reversions § 295 (1941).

The North Carolina legislature has in several respects amended the common-law rule of non-apportionment. G.S. 42-6 provides that in all cases where rents, or any other payments of any description, are made payable at fixed periods to successive owners *under any instrument,* and where the right of any owner to receive payment is terminated by a death or other uncertain event *during a period in which a payment is growing due,* "the payment becoming due next after such terminating event shall be apportioned among the successive owners according to the parts of such periods elapsing before and after the terminating event." G.S. 37-4 makes the same rule applicable to the income from

trusts. It provides, *inter alia,* that whenever an income beneficiary shall have the right to income from periodic payments, which include rent, and such right was determined by death or otherwise at a time other than the date when such periodic payments should be paid, "he or his personal representative shall be entitled to that portion of any such income next payable which amounts to the same percentage thereof as the time elapsed from the last due date of such periodic payments to and including the day of the determination of his right is of the total period during which such income would normally accrue. The remaining income shall be paid to the person next entitled to income by the terms of the transaction by which the principal (trust) was established." G.S. 42-7 apportions rents on farm leases which it extends in lieu of emblements, when the life tenant dies during the lease year. G.S. 37-4 brought the administration of trusts in harmony with the apportionment principles of both G.S. 42-6 and G.S. 42-7.

The rule applied in *In re Estate of Galloway, supra,* and *Trust Co. v. Frazelle, supra,* has not been changed by statute. These are of a genus of cases which do not fall within any of the amendments to the common-law rule and in which, for that reason, the rent was held to follow the reversion. In these cases the successive ownership is not under a trust, G.S. 37-4, and not "under any instrument, or by any will." G.S. 42-6. Where the predecessor owner had the fee prior to the execution of the instrument under which the successive owners take, the former cannot be said to own by the instrument, *i.e.,* the deed, will or trust indenture, by which the latter owners take. G.S. 42-6 by its terms makes provision for successive owners under the same instrument. For that reason it applies to the rents involved here, and *In re Estate of Galloway, supra,* and *Trust Co. v. Frazelle, supra,* are inapposite.

In addition to the two preceding cases and others of the same import, plaintiffs say they rely strongly on the case of *Phillips v. Gilbert,* 248 N.C. 183, 102 S.E. 2d 771, a case which came up from Jones County. The facts in that case are these: Testator devised his lands to the plaintiff as trustee for the benefit of testator's son during his life and at the son's death, to the plaintiff in fee. Plaintiff never assumed the duties of the trust. The son died December 28, 1956. Prior to his death his guardian, the defendant, had leased the land for the crop year 1957 for one-third of the crop. The defendant collected these rents, and the plaintiff sued for the landlord's share of the rents and the immediate possession of the farm. The defendant alleged that the plaintiff had forfeited his remainder by failing to execute his duties as trustee, and he counterclaimed for reimbursement of expenses incurred during his ward's last illness. The trial judge held that the trust had imposed no active duties upon the plaintiff and rendered judgment for the plaintiff on the

pleadings. In affirming the judgment this Court, speaking through Denny, J. (now C. J.), said that the ward "never had anything more than a life estate in the premises involved in this action, and upon his death the life estate was extinguished and the title to the premises passed to the plaintiff in fee simple, free from the obligations of the life tenant, except as to the rental agreement for the 1957 crop. It follows, therefore, that since the rent for the crop year 1957 did not accrue under the terms of the agreement until after the death of the life tenant, such rent became the property of the owner of the reversion, to wit, the plaintiff." *Id.* at 188, 102 S.E. 2d at 774.

Neither the pleadings nor the briefs in *Phillips v. Gilbert* raised the question of apportioning the rents, and apportionment was not an issue between the parties to the action. The life tenant died December 28, 1956. G.S. 42-23, applicable to Jones County, provides that agricultural leases for one year or from year to year shall be "from December first to December first." At the death of the life tenant, therefore, the lease had run for 28 days, approximately a month. The ward's personal representative, the only person who could have raised the question of apportionment or who could have collected the estate's share of the rents for those 28 days, was not a party to the action. Counsel either overlooked this aspect of the case or deemed the amount involved ($133.00) not worth the cost of an administration. As the case was constituted, the decision was clearly correct. See the comment on *Phillips v. Gilbert,* in 37 N.C.L. Rev. 423.

*Phillips v. Gilbert* does not upset the principles of apportionment established by the legislature in G.S. 42-6, G.S. 37-4, and G.S. 42-7. To bring about such a *volte-face* by a case which was actually concerned with whether a trust was passive or active and in which there was no issue as to apportionment, would be an unusual procedure indeed.

G.S. 42-7 applies only to farm leases which are determined, *inter alia,* by the death of a life tenant. Since the settlor authorized the trustee to make leases beyond the term of the duration of the trust, the leases so made did not terminate with Pearl K. Wells' death. G.S. 42-7 does not, therefore, apply, and *Hayes v. Wrenn,* 167 N.C. 229, 83 S.E. 356, and *King v. Foscue,* 91 N.C. 116 (the latter cited by defendants), allowing apportionment under G.S. 42-7, are inapplicable.

The two leases *sub judice* were for the calendar year 1962. The rents under them accrued from day to day throughout the term of the leases. Pearl K. Wells died on June 28, 1962, while they were "growing due." Her right to receive the income from these rents was determined on that day by her death. She and plaintiffs were successive owners under the trust instrument. The rents reserved were ⅓ of the sale price of the tobacco crops and were to be paid "at the warehouse" on the days the

tenants sold tobacco. These sale days could not, of course, be designated in the lease, but they were no less "fixed periods" within the meaning of G.S. 42-6, and "periodic payments" within the meaning of G.S. 37-4. We hold that under both G.S. 42-6 and G.S. 37-4, the 1962 rents from the Barron and the Kansas-Weaver-Langley farms are apportionable, 48.77% to the ancillary administrator of Pearl K. Wells and 51.23% to plaintiffs, 178 days of the period covered by the leases having elapsed before Pearl K. Wells' death, and 186 days after her death. Under the statutes "rent is considered as accruing from day to day, and the right to rent follows the ownership of the estate during the period when it is earned by the property, and accordingly is apportionable in respect of time." 52 C.J.S., Landlord and Tenant § 531(b) (1947).

The next question is what disposition is to be made of Federal Grain Program payments in the amount of $293.84, paid to defendant trustee under 75 Stat. 301, § 131, for the withdrawal of acreage from the production of certain grains during the crop year 1962. In effect, these payments were the *annual* rent which the federal government paid the trustee for 8.8 acres which it caused to be diverted from the growing of corn on the Moore farm to a use or non-use designated by the government. This rent was paid in two installments, pursuant to the law's requirement that payments in excess of 50% of any payments to producers may not be made in advance of performance. The first installment of $140.26 was paid prior to the death of Pearl K. Wells. The total rent accrued from day to day under a contract which, the parties stipulate, was for the calendar year 1962. Ordinarily, in the absence of statute, as between persons successively entitled to rent there is no apportionment of rent paid in advance. Annot., Apportionment of income where right to income commences or ends during the accrual period, 126 A.L.R. 12, 51; 32 Am. Jur., Landlord and Tenant § 455 (1941). G.S. 37-4 provides that "when the right of the first tenant accrues at a time other than the payment dates of such periodic payments, he shall only receive that portion of such income which amounts to the same percentage thereof as the time during which he has been so entitled is of the total period during which such income would normally accrue. . . ." This provision requires the apportionment of the total Federal Grain Program payments in the same percentages as the apportionment of the tobacco rents.

Finally, the expenses in the amount of $5,638.71 will be apportioned in the same percentages as the apportionment of the rents. G.S. 37-12(1), (3). This sum represents ordinary expenses incurred in the administration and management of the trust, including charges for miscellaneous labor and supplies, building repairs, property insurance and taxes, and trustee's commissions. Rent of realty is income, G.S. 37-3(1),

which is to be distributed to the person entitled "after payment of expenses properly chargeable to it." G.S. 37-12(1). Clearly, the trustee's expenses in raising the crop (labor and supplies) are properly chargeable against the income derived from the sale of the crop and are properly apportioned. In addition, G.S. 37-12(1) requires regularly recurring taxes, premiums on insurance, ordinary repairs, and trustee's compensation (except commissions computed on principal — not involved here) to be paid out of income. These expenses are "considered" by the statute, G.S. 37-12(3), to have accrued from day to day and are required to be apportioned on that basis "whenever the right of the tenant begins or ends at some date other than the payment date of the expenses."

The judgment of Mintz, J., is vacated and the cause remanded for the entry of judgment in accordance with this opinion.

Error and remanded.