143 S.E.2d 217 (1965)
265 N.C. 98
William M. WELLS, Jr., Alice Elizabeth Wells Romanek, and Josie M. Wells, Guardian of Redmond S. Wells, Plaintiffs,
v.
The PLANTERS NATIONAL BANK AND TRUST COMPANY, as Ancillary Administrator of the Estates of William M. Wells, Sr., and Pearl Kent Wells, and as Trustee under Certain Inter Vivos Trusts Created by William M. Wells, Sr., under dates of February 4, 1956, and February 6, 1956, Lillian Kent Dickens, Walter Glass Kent, and S. Garland Kent, Defendants.
No. 294.
Supreme Court of North Carolina.
July 23, 1965.
*221 Poyner, Geraghty, Hartsfield & Townsend, by Arch. E. Lynch, Jr., Raleigh, for plaintiffs appellants.
Battle, Winslow, Merrell, Scott & Wiley, by F. E. Winslow, Rocky Mount, for defendants appellees.
SHARP, Justice.
In entering his declaratory judgment Judge Mintz noted that the action involved two controversies: the first, between the plaintiff remaindermen and defendant Bank as ancillary administrator of the life tenant, Pearl K. Wells, over certain rents and expenses for 1962; the second, between one of the plaintiffs, R. S. Wells, and defendant Bank as trustee as to what estate he takes in the remainder of the corpus of the Pearl K. Wells Trust. Judge Mintz recognized that there is a misjoinder of parties and causes. His judgment recites that to this misjoinder "no objection has been raised in the interest of convenience and economy." We shall first consider the question raised by defendant Bank as trustee of the Pearl K. Wells Trust.
Did the interest of R. S. Wells in the corpus of the Pearl K. Wells Trust pass to him in fee, freed of the trust, as appointee under the will of Pearl K. Wells? Or did it pass, under the terms of the inter vivos trust, to defendant Bank as trustee for R. S. Wells for life and at his death to his heirs (excluding any adopted child) in fee? The answer is that R. S. Wells owns his share in fee, freed of the trust, as appointee. By the terms of the instrument creating the Pearl K. Wells Trust, the income beneficiary was given a general power of appointment to dispose of the corpus of the trust by her will just as if she herself owned the corpus free of the trust. She could have appointed to her own estate. Hicks v. Ward, 107 N.C. 392, 12 S.E. 318; 41 Am.Jur., Powers §§ 4, 55 (1942); Simes & Smith, Future Interests § 875 (2d Ed.1956). Had Pearl K. Wells failed to exercise the power, the share of R. S. Wells in the remainder of the corpus would have become, under the terms of the trust instrument as amended February 6, 1956, a part of the R. S. Wells Trust. R. S. Wells' interest in this trust was an equitable life estate. He was entitled to receive from the income or principal such sums as the trustee should determine to be "necessary and proper" for his support and that of his dependents. At his death the corpus of the trust was given to his heirs generally. Since the interest of R. S. Wells in the trust was an equitable one and that of his heirs a legal one, the Rule in Shelley's Case would have had no application. Benton v. Baucom, 192 N.C. 630, 633, 135 S.E. 629, 631. By the exercise of her power of appointment, Pearl K. Wells devised the remainder in all North Carolina farm lands which constituted a part of the trust, with the exception of one designated farm, "to the three children of (her) husband, William Mercer Wells, share and share alike." This was a devise of a fee to each child. G.S. § 31-38. By the exercise of her power of appointment she did not disturb the vested remainder which William M. Wells, Jr. and Alice Wells Romanek took under the Pearl K. Wells Trust, but she converted R. S. Wells' interest in the remainder of the trust corpus from an equitable life estate (via the R. S. Wells Trust) to a fee. Thus, as to him she did not merely parrot the language of the trust. A different estate passed to him through her exercising her power, to do which did not require her, as defendant *222 Bank contends, to divert entirely the interest of R. S. Wells to another person. It is obvious that by her devise of that property to R. S. Wells in fee, Pearl K. Wells changed, to that extent, her husband's plan that during the life of R. S. Wells defendant Bank should manage the property the settlor had provided for his son's support. In 1956 he had expressed this intent in the instrument creating the Pearl K. Wells Trust, the Mercer Farm Trust, the R. S. Wells Trust, as well as in his last will. At the same time he gave her, notwithstanding, specific power to change his plan with respect to the corpus of the Pearl K. Wells Trust, even to the extent of substituting other beneficiaries for his three children. She changed the plan for R. S. Wells by language in her will which "is clear and has a recognized legal meaning" leaving "no room for construction." Rhoads v. Hughes, 239 N.C. 534, 535, 80 S.E.2d 259. Since she did so, the settlor's over-all intent, which defendant Bank stresses so forcibly, is quite irrelevant. We hold that R. S. Wells takes his interest in the corpus of the Pearl K. Wells Trust in fee simple as a result of the exercise of her power of appointment.
Are the rents, in amount of $19,262.88, from the 1962 tobacco crops raised on those farms which plaintiffs acquired as successors to Pearl K. Wells subject to apportionment between them and the ancillary administrator of Pearl K. Wells, the life beneficiary of the trust? Contending that they are not, plaintiffs rely on In re Estate of Galloway, 229 N.C. 547, 50 S.E. 2d 563; First-Citizens Bank & Trust Co. v. Frazelle, 226 N.C. 724, 40 S.E.2d 367, and other cases which apply the well-established rule that "[r]ent which is due at the time of the death of the lessor passes to his personal representative for administration as an asset of the decedent's estate, while rent which becomes due after that time becomes the property of the heirs or devisees who are entitled to the reversion as an incident thereof." Trust Co. v. Frazelle, supra, 226 N.C. at 728, 40 S.E.2d at 371; accord, 32 Am.Jur., Landlord and Tenant § 457 (1941).
At common law where the landlord dies intestate between rent days, there is no apportionment of rents which are unservered and not then due, and the right to all rent accruing after the decedent's death devolves upon the heirs of the decedent lessor. 32 Am.Jur., Landlord and Tenant § 448 (1941); 2 Mordecai's Law Lectures 1367 (2d Ed.1916). "Thus, ordinarily, in the absence of statute, there is, upon the death of a lessor, no right to an apportionment of rents to accrue as between the administrator, executor, or trustee and the heir, devisee, or trust beneficiary." 32 Am. Jur., Landlord and Tenant § 457 (1941). (Italics ours.) The rents were said to follow the reversion. Hence, where A devised his personalty to B and Blackacre, rented to T and in T's possession as lessee, to C, and the rent on Blackacre fell due after A's death, C, not B, was entitled to all the rent, none of it being apportioned to B as personalty owned by A at the time of his death. And where A died intestate, his heirs, not his personal representative, were entitled to the whole of the rent. Interest, on the other hand, was apportionable between persons successively entitled. 33 Am.Jur., Life Estates, Remainders, and Reversions § 295 (1941).
The North Carolina legislature has in several respects amended the common-law rule of non-apportionment. G.S. § 42-6 provides that in all cases where rents, or any other payments of any description, are made payable at fixed periods to successive owners under any instrument, and where the right of any owner to receive payment is terminated by a death or other uncertain event during a period in which a payment is growing due, "the payment becoming due next after such terminating event shall be apportioned among the successive owners according to the parts of such periods elapsing before and after the terminating event." G.S. § 37-4 makes the same rule *223 applicable to the income from trusts. It provides, inter alia, that whenever an income beneficiary shall have the right to income from periodic payments, which include rent, and such right was determined by death or otherwise at a time other than the date when such periodic payments should be paid, "he or his personal representative shall be entitled to that portion of any such income next payable which amounts to the same percentage thereof as the time elapsed from the last due date of such periodic payments to and including the day of the determination of his right is of the total period during which such income would normally accrue. The remaining income shall be paid to the person next entitled to income by the terms of the transaction by which the principal (trust) was established." G.S. § 42-7 apportions rents on farm leases which it extends in lieu of emblements, when the life tenant dies during the lease year. G.S. § 37-4 brought the administration of trusts in harmony with the apportionment principles of both G.S. § 42-6 and G.S. § 42-7.
The rule applied in In re Estate of Galloway, supra, and First-Citizens Bank & Trust Co. v. Frazelle, supra, has not been changed by statute. These are of a genus of cases which do not fall within any of the amendments to the common-law rule and in which, for that reason, the rent was held to follow the reversion. In these cases the successive ownership is not under a trust, G.S. § 37-4, and not "under any instrument, or by any will." G.S. § 42-6. Where the predecessor owner had the fee prior to the execution of the instrument under which the successive owners take, the former cannot be said to own by the instrument, i. e., the deed, will or trust indenture, by which the latter owners take. G.S. § 42-6 by its terms makes provision for successive owners under the same instrument. For that reason it applies to the rents involved here, and In re Estate of Galloway, supra, and First Citizens Bank & Trust Co. v. Frazelle, supra, are inapposite.
In addition to the two preceding cases and others of the same import, plaintiffs say they rely strongly on the case of Phillips v. Gilbert, 248 N.C. 183, 102 S.E.2d 771, a case which came up from Jones County. The facts in that case are these: Testator devised his lands to the plaintiff as trustee for the benefit of testator's son during his life and at the son's death, to the plaintiff in fee. Plaintiff never assumed the duties of the trust. The son died December 28, 1956. Prior to his death his guardian, the defendant, had leased the land for the crop year 1957 for one-third of the crop. The defendant collected these rents, and the plaintiff sued for the landlord's share of the rents and the immediate possession of the farm. The defendant alleged that the plaintiff had forfeited his remainder by failing to execute his duties as trustee, and he counterclaimed for reimbursement of expenses incurred during his ward's last illness. The trial judge held that the trust had imposed no active duties upon the plaintiff and rendered judgment for the plaintiff on the pleadings. In affirming the judgment this Court, speaking through Denny, J. (now C. J.), said that the ward "never had anything more than a life estate in the premises involved in this action, and upon his death the life estate was extinguished and the title to the premises passed to the plaintiff in fee simple, free from the obligations of the life tenant, except as to the rental agreement for the 1957 crop year. It follows, therefore, that since the rent for the crop year 1957 did not accrue under the terms of the agreement until after the death of the life tenant, such rent became the property of the owner of the reversion, to wit, the plaintiff," Id. 248 at 188, 102 S.E.2d at 774.
Neither the pleadings nor the briefs in Phillips v. Gilbert raised the question of apportioning the rents, and apportionment was not an issue between the parties to the action. The life tenant died December 28, 1956. G.S. § 42-23, applicable to Jones County, provides that agricultural leases for one year or from year to year shall *224 be "from December first to December first." At the death of the life tenant, therefore, the lease had run for 28 days, approximately a month. The ward's personal representative, the only person who could have raised the question of apportionment or who could have collected the estate's share of the rents for those 28 days, was not a party to the action. Counsel either overlooked this aspect of the case or deemed the amount involved ($133.00) not worth the cost of an administration. As the case was constituted, the decision was clearly correct. See the comment on Phillips v. Gilbert in 37 N.C.L.Rev. 423.
Phillips v. Gilbert does not upset the principles of apportionment established by the legislature in G.S. § 42-6, G.S. § 37-4, and G.S. § 42-7. To bring about such a volte-face by a case which was actually concerned with whether a trust was passive or active and in which there was no issue as to apportionment, would be an unusual procedure indeed.
G.S. § 42-7 applies only to farm leases which are determined, inter alia, by the death of a life tenant. Since the settlor authorized the trustee to make leases beyond the term of the duration of the trust, the leases so made did not terminate with Pearl K. Wells' death. G.S. § 42-7 does not, therefore, apply, and Hayes v. Wrenn, 167 N.C. 229, 83 S.E. 356, and King v. Foscue, 91 N.C. 116 (the latter cited by defendants), allowing apportionment under G.S. § 42-7, are inapplicable.
The two leases sub judice were for the calendar year 1962. The rents under them accrued from day to day throughout the term of the leases. Pearl K. Wells died on June 28, 1962, while they were "growing due." Her right to receive the income from these rents was determined on that day by her death. She and plaintiffs were successive owners under the trust instrument. The rents reserved were 1/3 of the sale price of the tobacco crops and were to be paid "at the warehouse" on the days the tenants sold tobacco. These sale days could not, of course, be designated in the lease, but they were no less "fixed periods" within the meaning of G.S. § 42-6, and "periodic payments" within the meaning of G.S. § 37-4. We hold that under both G.S. § 42-6 and G.S. § 37-4, the 1962 rents from the Barron and the Kansas-Weaver-Langley farms are apportionable, 48.77% to the ancillary administrator of Pearl K. Wells and 51.23% to plaintiffs, 178 days of the period covered by the leases having elapsed before Pearl K. Wells' death, and 186 days after her death. Under the statutes "rent is considered as accruing from day to day, and the right to rent follows the ownership of the estate during the period when it is earned by the property, and accordingly it is apportionable in respect to time." 52 C.J.S. Landlord and Tenant § 531b (1947).
The next question is what disposition is to be made of Federal Grain Program payments in the amount of $293.84, paid to defendant trustee under 75 Stat. 301, § 131, for the withdrawal of acreage from the production of certain grains during the crop year 1962. In effect, these payments were the annual rent which the federal government paid the trustee for 8.8 acres which it caused to be diverted from the growing of corn on the Moore farm to a use or non-use designated by the government. This rent was paid in two installments, pursuant to the law's requirement that payments in excess of 50% of any payments to producers may not be made in advance of performance. The first installment of $140.26 was paid prior to the death of Pearl K. Wells. The total rent accrued from day to day under a contract which, the parties stipulate, was for the calendar year 1962. Ordinarily, in the absence of statute, as between persons successively entitled to rent there is no apportionment of rent paid in advance. Annot., Apportionment of income where right to income commences or ends during *225 the accrual period, 126 A.L.R. 12, 51; 32 Am.Jur., Landlord and Tenant § 455 (1941). G.S. § 37-4 provides that "when the right of the first tenant accrues at a time other than the payment dates of such periodic payments, he shall only receive that portion of such income which amounts to the same percentage thereof as the time during which he has been so entitled is of the total period during which such income would normally acrue * * *." This provision requires the apportionment of the total Federal Grain Program payments in the same percentages as the apportionment of the tobacco rents.
Finally, the expenses in the amount of $5,638.71 will be apportioned in the same percentages as the apportionment of the rents. G.S. § 37-12(1),(3). This sum represents ordinary expenses incurred in the administration and management of the trust, including charges for miscellaneous labor and supplies, building repairs, property insurance and taxes, and trustee's commissions. Rent of realty is income, G. S. § 37-3(1), which is to be distributed to the person entitled "after payment of expenses properly chargeable to it." G.S. § 37-12(1). Clearly, the trustee's expenses in raising the crop (labor and supplies) are properly chargeable against the income derived from the sale of the crop and are properly apportioned. In addition, G.S. § 37-12(1) requires regularly recurring taxes, premiums on insurance, ordinary repairs, and trustee's compensation (except commissions computed on principalnot involved here) to be paid out of income. These expenses are "considered" by the statute, G.S. § 37-12(3), to have accrued from day to day and are required to be apportioned on that basis "whenever the right of the tenant begins or ends at some date other than the payment date of the expenses."
The judgment of Mintz, J., is vacated and the cause remanded for the entry of judgment in accordance with this opinion.
Error and Remanded.